SHEREE SMITH CHAPMAN, Appellant, *v.* FRANCIS P. CHAPMAN, Jr. AND JOANN CHAPMAN, Respondents.

No. 11217

March 13, 1980
607 P.2d 1141

*Bilbray, Carelli & Miller,* Las Vegas, for Appellant.

*David M. Schreiber,* Las Vegas, for Respondents.

## OPINION

By the Court, MOWBRAY, C. J.:

Sheree Smith Chapman appeals from the judgment of the district court terminating her parental rights in her daughter. Because we consider the record before us insufficient to support the findings made below, we reverse.

Michelle Chapman was born to appellant and her now deceased husband, Phillip Chapman, in 1971. The parents separated in June, 1976, and Sheree kept the child for about a month. The father then took Michelle (according to appellant's testimony, on the pretext of a visit), and refused to permit Sheree to resume custody of the child. Around October, 1976, Phillip left Michelle with his brother and his wife, respondents here, who cared for the child for about seven months. Sheree visited her daughter on weekends and took her for a week in December, 1976. Around May, 1977, Phillip took Michelle back to live with him, but in December, 1977, he returned her to his brother's family. Phillip died in January, 1978, and respondents were appointed guardians of Michelle. No transcript of the guardianship proceeding was made, and no record

of the district court's findings was introduced in evidence at the instant hearing, although it appears that the district court specifically found, in the former proceeding, that appellant was an unfit parent. Respondents immediately petitioned the district court to terminate appellant's parental rights in Michelle, NRS 128.030 *et seq.,* in order to adopt the child themselves. After a hearing, the court found that Sheree is an unfit parent and that Michelle has been neglected and abandoned by appellant within the meaning of our statute, NRS 128.005 *et seq.,* and terminated appellant's parental rights. This appeal ensued.

Termination of parental rights is a drastic measure, which "should be applied with caution." Carson v. Lowe, 76 Nev. 446, 451, 357 P.2d 591, 594 (1960). The petitioner requesting the termination is required by our statute "to establish the facts," and the court must give "due regard to the rights and claims of the parent . . . and to any and all ties of blood and affection, but with a dominant purpose of serving the best interest" of the child. NRS 128.090. We have held that, on review, we will sustain a finding of abandonment if there is substantial evidence in the record to support it, Sernaker v. Ehrlich, 86 Nev. 277, 279–80, 468 P.2d 5, 7 (1970); but we have also indicated that we will "question closely. termination of parental rights." Casper v. Huber, 85 Nev. 474, 477, 456 P.2d 436, 438 (1969). In the instant case, the district court found that all three statutory grounds for termination, unfitness, neglect, and abandonment, NRS 128.105,[1] were present. We turn now to the evidence adduced in support of these findings.

We are confronted at the outset by a defect in the record which makes meaningful review of this case difficult. The district judge who held the hearing on the petition for termination in the instant case was the same judge who had presided at the

[1] NRS 128.105 provides:
  1. A finding by the court of any one of the following:
  (a) Abandonment of a child;
  (b) Neglect of a child; or
  (c) Unfitness of a parent,
is sufficient ground for termination of parental rights.
  2. Upon a finding by the court that a parent or parents have made only token efforts:
  (a) To support or communicate with the child;
  (b) To prevent neglect of the child; or
  (c) To avoid being an unfit parent,
the court may declare the child abandoned or neglected or the parent unfit.

previous guardianship proceeding. Although no transcript of that proceeding was available, and no record of the court's findings was offered in evidence, the district court purported to take judicial notice of the evidence which had been before him in the guardianship proceeding. In the findings of fact in the instant case, the district court specifically relied upon evidence which was not in the present record. Our statute does not permit taking judicial notice in these circumstances. NRS 47.130. We must therefore determine whether there is sufficient evidence in the record before us in this proceeding to support the findings in the instant case, without reference to evidence offered in prior proceedings.

The district court found that appellant had abandoned her daughter,[2] both by conduct which evinced a settled purpose to forego custody and to relinquish all claims to the child, and by leaving the child in the custody of respondents without more than token efforts to communicate with her for a period in excess of six months. The court below considered the period between the date of the hearing, June 8, 1978, and the date respondents were appointed guardians of the child, February 27, 1978, as part of the six month period. It appears, however, that during this period appellant was under a temporary restraining order, issued as part of the guardianship proceeding, prohibiting any contact with the child. The statute cannot mean that "token efforts" to communicate with a child, NRS 128.105(2), while the parent is legally prohibited from such contact, will support a finding of abandonment. Cf. Pyborn v. Quathamer, 96 Nev. 145, 605 P.2d 1147 (1980) (finding of "no real attempts to communicate with the child" supports finding of abandonment). The evidence presented at this hearing further established that, during at least part of this period, appellant was seriously ill. Finally, the evidence adduced at the present hearing indicated that the appellant had visited the child often during the period that her husband had taken custody of Michelle. If other evidence was presented at the guardianship hearing as to appellant's efforts to contact Michelle before the temporary restraining order was issued, we have no way of reviewing its adequacy as it is not in the record before

---

[2]NRS 128.012 provides:

"Abandonment of child" imports any conduct of one or both parents of a child which evinces a settled purpose on the part of one or both parents to forego all parental custody and relinquish all claims to the child, and a parent or parents of a child who leave the child in the care and custody of another without provision for his support and without communication for a period of 6 months are presumed to have intended to abandon the child.

us. On the basis of this record, we cannot say that substantial evidence supports the finding of abandonment.

NRS 128.014 defines a neglected child.[3] As we read the statute, a finding of neglect must be based upon the treatment of the child while the parent has custody: neglect is not established when the child is left by the parent in an environment where the child is known to be receiving proper care. In re Adoption of R.R.R., 96 Cal.Rptr. 308 (Ct.App. 1971). The evidence presented at the hearing established that appellant and her husband had taken Michelle to a rock concert on the child's birthday, and that, on a single occasion five years before the hearing, the petitioners had seen Michelle riding her tricycle on the sidewalk near a busy street without adult supervision "that you could see." We hold that the evidence presented at the hearing was insufficient, as a matter of law, to support a finding of neglect within the meaning of our statute.

An unfit parent is also statutorily defined.[4] The evidence adduced in support of the district court's finding of appellant's unfitness established that she had been convicted of transporting marijuana in 1974 (although she was no longer on probation at the time of the hearing); that she changed her place of residence frequently; that she socialized with a man who was on probation; that her employment history was sporadic; and that she admitted having had a drink while taking prescribed sedative medication. While these facts indicate that appellant's

[3]NRS 128.014 provides:

"Neglected child" is a child:

1. Who lacks the proper parental care by reason of the fault or habits of his parent, guardian or custodian;

2. Whose parent, guardian or custodian neglects or refuses to provide proper or necessary subsistence, education, medical or surgical care, or other care necessary for his health, morals or well-being;

3. Whose parent, guardian or custodian neglects or refuses to provide the special care made necessary by his physical or mental condition;

4. Who is found in a disreputable place, or who is permitted to associate with vagrants or vicious or immoral persons; or

5. Who engages or is in a situation dangerous to life or limb, or injurious to health or morals of himself or others, and the parent's neglect need not be willful.

[4]NRS 128.018 provides:

"Unfit parent" is any parent of a child who, by reason of his fault or habit or conduct toward the child or other persons, fails to provide such child with proper care, guidance and support, or who knowingly permits such child to associate with vagrants, vicious or immoral persons, or to live in a disreputable place.

mode of life is clearly more bohemian than respondents', *see* Painter v. Bannister, 140 N.W.2d 152, 154 (Iowa 1966), we cannot say that this evidence justifies the permanent and irrevocable termination of the relationship between parent and child. *See* In re T.M.R., 116 Cal.Rptr. 292, 297 (Ct.App. 1974).

In addition, we note that the record does not contain any evidence, beyond the respondents' testimony, as to the child's relationship with her mother. No psychological testimony was offered, nor was a report from any child custody agency of the state entered into evidence. While there may be cases which are so clear that such evidence is not necessary, because the "best interests" of the child require the severance of all ties with the natural parent despite a "due regard . . . to any and all ties of blood and affection," NRS 128.090, this case is not one of them.

Since we find that the evidence in the present record before us is insufficient to support the findings made below, we are constrained to reverse the judgment of the district court. We note, however, that our decision here is not intended to alter the present position of respondents as the guardians of the minor child, nor to foreclose the opportunity of respondents at a later date to seek the termination of appellant's parental rights. We therefore reverse the judgment of the district court and remand the cause with directions to dismiss the petition without prejudice to respondents' right to refile it.

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.