# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE PARENTAL RIGHTS AS TO D. S. S. AND S. M. S., MINORS.

LENORE MARIE WARE,
Appellant,
vs.
STATE OF NEVADA DEPARTMENT OF FAMILY SERVICES; D. S. S.; AND S. M. S., MINORS.
Respondents.

No. 73290

**FILED**

JUL 27 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order terminating appellant's parental rights. Eighth Judicial District Court, Family Court Division, Clark County; Robert Teuton, Judge.

## DISCUSSION

On May 23, 2017, the district court entered its findings of fact, conclusions of law, and order terminating Lenore Ware's[1] parental rights of her two children. Ware now argues that the district court abused its discretion when it terminated her parental rights and that the order should be reversed.[2] We disagree.

This court recognizes that termination of parental rights "is an exercise of awesome power." *Smith v. Smith*, 102 Nev. 263, 266, 720 P.2d 1219, 1220 (1986) (*overruled on other grounds by In re Termination of*

---

[1]This order also terminated the parental rights of the children's natural father; however, that termination is outside the scope of this appeal.

[2]The parties know the facts of this case and we do not state them here except as necessary for analysis.

18-28967

*Parental Rights as to N.J.,* 116 Nev. 790, 800 n.4, 8 P.3d 126, 132 n.4 (2000)). Severance of the parent-child relationship "is tantamount to imposition of a civil death penalty." *Drury v. Lang,* 105 Nev. 430, 433, 776 P.2d 843, 845 (1989). "Accordingly, this court closely scrutinizes whether the district court properly preserved or terminated the parental rights at issue." *In re Termination of Parental Rights as to N.J.,* 116 Nev. at 795, 8 P.3d at 129. Due process requires that clear and convincing evidence be established." *Id.* However, "[t]his court will uphold termination orders based on substantial evidence, and will not substitute its own judgment for that of the district court." *Id.*

To terminate parental rights, the district court must find that "[t]he best interests of the child would be served by the termination of parental rights" and that "[t]he conduct of the parent or parents was the basis for a finding made pursuant to subsection 3 of NRS 432B.393 or demonstrated" parental fault. NRS 128.105(1)(2015). Parental fault requires at least one finding of abandonment, neglect, parental unfitness, failure of parental adjustment, risk of serious injury, only token efforts to prevent termination of parental rights, etc. NRS 128.105(1)(b)(1)-(6). Parental fault is proven by clear and convincing evidence. *In re Parental Rights as to K.D.L.,* 118 Nev. 737, 746, 58 P.3d 181, 187 (2002).

In regards to the best interest prong, under NRS 128.109(2):

> If a child has been placed outside of his or her home pursuant to chapter 432B of NRS and has resided outside of his or her home pursuant to that placement for 14 months of any 20 consecutive months, the best interests of the child must be presumed to be served by the termination of parental rights.

This is a rebuttable presumption that requires the parent to show that reunification is in the best interest of the child by a "preponderance of the evidence." *In re J.D.N.*, 128 Nev. 462, 473, 283 P.3d 842, 849 (2012).

The evidence is unrefuted that the children were placed outside of their home from March 21, 2015, pursuant to chapter 432B, and never returned, triggering the presumption set forth in NRS 128.109(2). The district court concluded that the NRS 128.109(2) presumption applied and that it was not rebutted by a preponderance of the evidence. Moreover, the district court found that "in addition to the presumption, it is in the best interest of [the children] that the parental rights . . . be terminated." The district court considered the efforts made by both parents to return the children to their care; however, the court noted that this did not occur for the first 17 months of the children's removal and "that the children could not, at the conclusion of the trial in February 2017, be returned to the care of either [parent] within a reasonable period of time." As part of this conclusion, the district court considered the fact that Ware had attempted to communicate with her children as of August 2016, and had successfully been attending drug and parenting counseling. In addition, the district court considered the fact that the children's therapist indicated that reunification, while possible, would be highly detrimental if not done over a very long period of time.

We hold that the district court's finding that Ware failed to rebut the NRS 128.109(2) presumption was supported by substantial evidence. Ware provided no evidence, beyond speculation, to indicate that she was capable—not just willing—to provide housing or care for her children as of the date of termination. While Ware presented evidence that she was steadily improving, and could potentially obtain a bed at a facility

that allowed children, her care providers indicated that she would not be able to live independently for another year and had no current means of employment. This, when coupled with the psychologist's testimony that the children had developed a stable, bonded relationship with their foster parents and foster sibling, and would likely suffer further trauma upon reunification, supports the conclusion that the district court did not abuse its discretion when it determined that Ware failed to rebut the NRS 128.109(2) presumption.

Even assuming, as Ware argues, that the DFS caseworker prevented communications between Ware and the children or misled the district court regarding the visitation hearing in September, there is no evidence that this information had any bearing on the district court's decision. Rather, it was the 16 or 17 months of complete, unrefuted abandonment upon which the district court based its findings. The children were ages 4 and 1 at the time they were removed from Ware's care. By the time Ware reached out to contact her children, seemingly triggered only by her incarceration, the children were 5 1/2 and 2 1/2. When the termination order was filed, they were ages 6 and 3 and had been out of the care of their natural parents for 26 months, more than 70% of the youngest child's life. While reunification may have been possible, Ware does not contest that it likely would have taken at least another year, and she fails to provide any evidence as to why such a process would have been in her children's best interest. Accordingly, we hold that there is substantial evidence supporting the district court's decision that termination of Ware's parental rights was in the best interest of the children.

Additionally, we hold that the district court did not abuse its discretion by finding that Ware's "conduct . . . was the basis for a finding

Supreme Court
OF
Nevada

(O) 1947A

made pursuant to subsection 3 of NRS 432B.393 or demonstrated" parental fault. NRS 128.105(1). Importantly, the district court need find only one grounds for parental fault by clear and convincing evidence. NRS 128.105. Here, the district court found many, including, abandonment, token efforts to care for the child, failure of parental adjustment, risk of serious mental or emotional injury, and a finding pursuant to NRS 432B.393(3). With regard to abandonment, Ware argues that opioid addiction is not intentional conduct that shows a settled purpose to relinquish all rights and abandon one's children. *See* NRS 128.012(2). However, it is Ware's 16 or 17 month absence from her children's lives, not her opioid addiction itself, that the district court considered when evaluating abandonment and parental fault. *See* NRS 128.012(2). We conclude that this analysis was proper and note that despite Ware's later efforts to combat her addiction, her conduct triggered too many statutory presumptions and evidentiary hurdles for her to overcome. *See* NRS 128.012(2); NRS 128.109(1)(b); NRS 128.109(1)(a); NRS 432B.393(3)(b); and NRS 128.105(2). As such, we conclude that the district court, having met the requirements set forth in NRS 128.105(1), did not err by ordering Ware's parental rights be terminated. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty



cc: Hon. Robert Teuton, District Judge, Family Court Division
Karen A. Connolly, Ltd.
McDonald Carano LLP/Las Vegas
Legal Aid Center of Southern Nevada, Inc.
Clark County District Attorney/Juvenile Division
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A