*746
 
 ZACHARY, Judge.
 

 *621
 
 Respondent-mother ("respondent") appeals from an order denying her motion to vacate an order that had adjudicated respondent's children "Kate" and "Carl"
 
 [1]
 
 to be neglected and dependent juveniles. Although respondent failed to appeal in a timely fashion from the underlying order adjudicating the children to be neglected and dependent, we have granted respondent's petition for a writ of certiorari in order to reach the merits of her appeal. Respondent also appeals from a permanency planning order. For the reasons discussed below, we reverse the adjudication and disposition order, vacate all subsequent orders resulting from that order, and remand for further proceedings with respect to Carl.
 
 [2]
 

 I. Factual and Procedural History
 

 On 14 July 2015, the Orange County Department of Social Services ("DSS") filed juvenile petitions alleging that 17-year-old Kate and 13-year-old Carl were neglected and dependent. The petitions alleged that respondent was "abusing or misusing" anti-anxiety and pain medications, and that on 2 April 2015, respondent had been involuntarily committed to UNC Hospital for several days. In addition, the petitions alleged that Kate and Carl did not want to live with respondent until she was treated for substance abuse. Judge Joseph Moody Buckner conducted a hearing on the petitions on 6 August 2015. On 27 August 2015, Judge Buckner entered an order that adjudicated Kate and Carl to be
 
 *622
 
 neglected and dependent, placed them in the legal and physical custody of respondent's brother, "Mr. R.," and scheduled a permanency planning hearing for 5 November 2015.
 

 On 14 September 2015, respondent, who was then represented by appointed counsel James E. Tanner, III, filed a
 
 pro se
 
 motion seeking the removal of her court-appointed counsel and asking the court to vacate the adjudication and disposition order due to "lack of consent, misrepresentation/facts not presented to the Court, and ineffective assistance of counsel." Respondent's motions were first heard by Judge Beverly Scarlett on 1 October 2015. At that hearing, Judge Scarlett told respondent that if the court removed Mr. Tanner, she would then be left with the choice of retaining private counsel or proceeding without counsel. Although the record contains no ruling on respondent's motion for removal of her appointed counsel, respondent proceeded without the assistance of counsel after the 1 October 2015 motion hearing. Judge Scarlett continued the hearing on the motion to vacate the adjudication order until it could be heard by Judge Buckner.
 

 Judge Buckner held a hearing on respondent's motion to vacate the adjudication order on 22 October 2015, and entered an order denying respondent's motion on 20 November 2015. On 5 November 2015, after the hearing on respondent's motion to vacate the order for adjudication and disposition but before the entry of Judge Buckner's order denying respondent's motion, Judge Scarlett conducted a permanency planning hearing. On 24 November 2015, Judge Scarlett entered a permanency planning order that established a permanent plan of guardianship for Kate and Carl and appointed Mr. R. as their guardian. The order granted respondent supervised visitation with the children, declared the case "closed to further reviews" and released DSS and the guardian
 
 ad litem
 
 from their involvement in this matter.
 

 Respondent filed timely notice of appeal from the order denying her motion to vacate the adjudication order and from the permanency planning order. However, respondent failed to enter a timely notice of appeal from the underlying order for adjudication and disposition. Counsel appointed to represent respondent on appeal has filed a petition for writ of certiorari asking this Court to review the original adjudication order entered on 27 August 2015. N.C.R. App. P. 21(a)(1) (2015) provides that the "writ of certiorari may be issued in appropriate circumstances ... when the right to prosecute an appeal has been lost by failure to take timely action[.]" Our courts have generally
 
 *747
 
 interpreted the term "appropriate circumstances" in Rule 21(a) to mean that "the right of appeal has been lost through no fault of the petitioner[,]"
 
 *623
 

 Johnson v. Taylor
 
 ,
 
 257 N.C. 740
 
 , 743,
 
 127 S.E.2d 533
 
 , 535 (1962), and "that error was probably committed below."
 
 State v. Grundler
 
 ,
 
 251 N.C. 177
 
 , 189,
 
 111 S.E.2d 1
 
 , 9 (1959). Ultimately, however, our decision to issue the writ is discretionary.
 
 State v. McCoy
 
 ,
 
 171 N.C.App. 636
 
 , 639,
 
 615 S.E.2d 319
 
 , 321 (2005). In this case, the record shows that respondent lost her right of appeal through no fault of her own and, as discussed below, we conclude that respondent has shown error by the trial court. In our discretion, we allow her petition for writ of certiorari to review the order.
 

 II. Order of Adjudication and Disposition
 

 On appeal, respondent argues that the court erred by entering the order adjudicating her children to be neglected and dependent, on the grounds that the trial court neither conducted a proper adjudicatory hearing nor properly established respondent's consent to the adjudication. We conclude that respondent's argument has merit.
 

 A. Legal Principles and Standard of Review
 

 When a juvenile is alleged to be abused, neglected, or dependent, N.C. Gen. Stat. § 7B-802 (2015) requires the court to conduct an "adjudicatory hearing" in the form of "a judicial process designed to adjudicate the existence or nonexistence of any of the conditions alleged in a petition." "In the adjudicatory hearing, the court shall protect the rights of the juvenile and the juvenile's parent to assure due process of law."
 

 Id.
 

 "[T]he allegations in a petition alleging that a juvenile is abused, neglected, or dependent shall be proved by clear and convincing evidence." N.C. Gen. Stat. § 7B-805 (2015). Moreover, the trial court may accept a stipulation to adjudicatory facts only as follows:
 

 A record of specific stipulated adjudicatory facts shall be made by either reducing the facts to a writing, signed by each party stipulating to them and submitted to the court; or by reading the facts into the record, followed by an oral statement of agreement from each party stipulating to them.
 

 N.C. Gen. Stat. § 7B-807(a) (2015).
 

 "An adjudication of abuse, neglect or dependency in the absence of an adjudicatory hearing is permitted only in very limited circumstances."
 
 In re Shaw
 
 ,
 
 152 N.C.App. 126
 
 , 129,
 
 566 S.E.2d 744
 
 , 746 (2002).
 
 N.C. Gen. Stat. § 7-801
 
 (b1) (2015) authorizes the court to enter "a consent adjudication order" only if: (1) all parties are present or represented by counsel, who is present and authorized to consent; (2) the juvenile
 
 *624
 
 is represented by counsel; and (3) the court makes sufficient findings of fact.
 

 N.C. Gen. Stat. § 7B-807(b) (2015) requires that an "adjudicatory order shall be in writing and shall contain appropriate findings of fact and conclusions of law." " '[T]he trial court's findings must consist of more than a recitation of the allegations' contained in the juvenile petition. '[T]he trial court must, through processes of logical reasoning, based on the evidentiary facts before it, find the ultimate facts essential to support the conclusions of law.' "
 
 In the Matter of S.C.R
 
 .,
 
 217 N.C.App. 166
 
 , 168,
 
 718 S.E.2d 709
 
 , 711-12 (2011) (quoting
 
 In re O.W
 
 .,
 
 164 N.C.App. 699
 
 , 702,
 
 596 S.E.2d 851
 
 , 853 (2004) (internal quotation omitted)). In addition:
 

 In juvenile proceedings, it is permissible for trial courts to consider all written reports and materials submitted in connection with those proceedings.... [However,] the trial court may not delegate its fact finding duty. Consequently, the trial court should not broadly incorporate these written reports from outside sources as its findings of fact.
 

 In re J.S
 
 .,
 
 165 N.C.App. 509
 
 , 511,
 
 598 S.E.2d 658
 
 , 660 (2004) (citing
 
 In re Ivey
 
 ,
 
 156 N.C.App. 398
 
 , 402,
 
 576 S.E.2d 386
 
 , 390 (2003), and
 
 In re Harton
 
 ,
 
 156 N.C.App. 655
 
 , 660,
 
 577 S.E.2d 334
 
 , 337 (2003) ). On appeal from an adjudication of neglect, abuse, or dependency, this Court must "determine '(1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact[.]' "
 
 In re T.H.T
 
 .,
 
 185 N.C.App. 337
 
 , 343,
 
 648 S.E.2d 519
 
 , 523 (2007) (quoting
 
 In re Gleisner
 
 ,
 
 141 N.C.App. 475
 
 , 480,
 
 539 S.E.2d 362
 
 , 365 (2000)
 

 *748
 
 ),
 
 aff'd as modified
 
 ,
 
 362 N.C. 446
 
 ,
 
 665 S.E.2d 54
 
 (2008).
 

 B. Discussion
 

 The record on appeal shows that the parties attended a Child Planning Conference on 21 July 2015, and that a report submitted by DSS to the trial court indicated that a "Consent Agreement could not be reached" at the conference. The case was scheduled for adjudication and disposition on 6 August 2015. The entire adjudication hearing consisted of the following exchange between the trial court and counsel:
 

 [DSS COUNSEL]: Handing up the reports in [Kate and Carl's] case and I understand there's a consent.
 

 THE COURT: Okay. I appreciate everybody's consent and hard work in this case. It's going to work out fine. We'll
 
 *625
 
 approve the placement as recommended by [the guardian
 
 ad litem
 
 ] and [the DSS social worker]. And we need a three-month [hearing] date.
 

 [FATHER'S COUNSEL]: Oh. Your Honor, if I could be heard.
 

 THE COURT: Of course.
 

 [FATHER'S COUNSEL]: Yes, Your Honor. [Father] is in agreement with the children being with Mr. [R]. He has a couple of concerns. One being that there is a fairly substantial amount of money that comes to-that the children get by virtue of his disability. And that money is still going to Mother-
 

 THE COURT: And it's going to change.
 

 ....
 

 [COUNSEL FOR FATHER]: ... Okay. And also, just to specify that he can have unsupervised visitation at the permission-at the desire of the children....
 

 ....
 

 [COUNSEL FOR DSS] And how should the order read with regards to the children's disability benefits?
 

 THE COURT: That [Mr. R. will] become the payee and recipient.
 

 ...
 

 MR. TANNER: Your Honor. So my client has a couple of requests. She's willing to comply with the recommendations. She would like to have some ability to have further visitation.
 

 THE COURT: Well, there's nothing restricting her from that.
 

 MR. TANNER: Okay.
 

 THE COURT: There won't be anything in the order doing that.
 

 MR. TANNER: There won't be anything restricting it?
 

 THE COURT: No.
 

 *626
 
 ....
 

 MR. TANNER: Second issue as it says: That [Father] is to assist with providing transportation. I was informed that there was some history of substance use, drunk driving, prior custody orders from some years past.
 

 ....
 

 THE COURT: Everybody that's providing transportation have a license and insurance. How about that?
 

 ...
 

 THE COURT: Okay. Have a license and insurance and not be impaired.
 

 MR. TANNER: Okay.
 

 THE COURT: Or using. All right? Thank you.
 

 The hearing concluded with counsel for DSS announcing a subsequent hearing date of 5 November 2015.
 

 The order of adjudication and disposition recites that its findings of fact are being made "based on clear, cogent and convincing evidence" and that the court's conclusions are based on these findings of fact. However, the trial court received no testimony at the 6 August 2015 hearing, and the parties did not stipulate to any adjudicatory facts pursuant to N.C. Gen. Stat. § 7B-807(a). Instead, the adjudication of the minor children as neglected and dependent was supported solely by two written reports submitted by DSS at the hearing. As a result, the trial court's findings of fact consist of recitations from the facts alleged in the petitions and wholesale incorporation of reports prepared by DSS. We conclude that the trial court entered its adjudication order without conducting an adjudicatory hearing as required by N.C. Gen. Stat. § 7B-802.
 

 *749
 
 We further conclude that the order for adjudication and disposition is not a valid consent order and did not meet the requirements of
 
 N.C. Gen. Stat. § 7-801
 
 (b1). The order contains no findings stating that the parties had stipulated to adjudicative facts or had consented to the children being adjudicated as neglected and dependent. Nor is there any evidence that a consent order had been drafted for the parties' agreement. In sum, the record contains no evidence that the parties had reached a consent agreement or that respondent had consented to her children being adjudicated as neglected and dependent.
 

 *627
 
 In
 
 In re J.N.S.
 
 ,
 
 207 N.C.App. 670
 
 , 678,
 
 704 S.E.2d 511
 
 , 517 (2010), the record showed that the
 
 respondent's
 
 attorney had drafted a proposed consent order. In addition, the parties were informed in open court that the trial court intended to enter an adjudication order based upon the consent of the parties. In that factual context, this Court held that the respondent's failure to object to entry of the consent order constituted a waiver of the right to challenge the order on appeal. In contrast, in the present case, there is no evidence in the record that a consent agreement had been reached for adjudication or that a consent order had been drafted. Moreover, although the attorney for DSS and the trial court referred to "consent" several times, none of those present stated the nature of the purported "consent" for the record. Specifically, neither of the parties' attorneys nor the trial court ever stated that respondent was consenting to the adjudication of her children as neglected and dependent.
 
 [3]
 

 "As the link between a parent and child is a fundamental right worthy of the highest degree of scrutiny, the trial court must fulfill all procedural requirements in the course of its duty to determine whether allegations of neglect are supported by clear and convincing evidence."
 
 Thrift v. Buncombe County DSS
 
 ,
 
 137 N.C.App. 559
 
 , 563,
 
 528 S.E.2d 394
 
 , 396 (2000) (citation omitted). In the present case, the adjudication and disposition order neither resulted from a proper adjudicatory hearing under N.C. Gen. Stat. § 7B-802, nor met the requirements of a valid consent adjudication order under N.C. Gen. Stat. § 7B-801(b1). Therefore, we reverse the order and remand to the trial court for further proceedings as to Carl.
 

 III. Remaining Issues
 

 As we have reversed the trial court's order for adjudication and disposition, we vacate the orders based upon the adjudication order, including the order that denied respondent's motion to vacate the adjudication order and the 24 November 2015 permanency planning order. Accordingly, we need not address respondent's arguments challenging these orders.
 

 Respondent also argues that the court erred by treating her motion for removal of her court-appointed counsel as a waiver of her right to
 
 *628
 
 appointed counsel under N.C. Gen. Stat. § 7B-602(a) (2015) and by requiring her to proceed
 
 pro se
 
 without conducting the inquiry mandated by N.C. Gen. Stat. § 7B-602(a1). As we have reversed the underlying order for adjudication and disposition and have vacated the subsequent orders arising from that order, we find it unnecessary to reach this issue.
 

 IV. Conclusion
 

 Respondent's petition for writ of certiorari is allowed for the purpose of reversing the order for adjudication and disposition entered on 27 August 2015. All subsequent orders entered by the trial court, including the permanency planning order entered on 24 November 2015, are hereby vacated. We remand the cause for a new hearing on the petition filed by DSS in 15 JA 63 with regard to Carl. The trial court shall hold a hearing to determine respondent's eligibility and desire for appointed counsel in accordance with N.C. Gen. Stat. § 7B-602.
 

 *750
 
 REVERSED AND REMANDED IN PART; VACATED IN PART.
 

 Judges BRYANT and TYSON concur.
 

 [1]
 

 We use these pseudonyms to protect the juveniles' privacy.
 

 [2]
 

 Kate reached the age of majority in June 2016 and is no longer within the jurisdiction of the juvenile court.
 
 See
 
 N.C. Gen. Stat. § 7B-201(a) (2015).
 

 [3]
 

 Respondent's attorney stated that respondent had agreed to "comply with the recommendations." We conclude that this was likely a reference to the "recommendations" in respondent's case plan, as there is no evidence in the record that any party had "recommended" that respondent consent to the adjudication.